## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLOOMIN' BRANDS INC., OUTBACK STEAKHOUSE OF FLORIDA, LLC, CARRABBA'S ITALIAN GRILL, LLC, AND BONEFISH GRILL, LLC,<br><br>                                        Plaintiffs,<br><br>v.<br><br>ENJOY THE CITY NORTH, INC. d/b/a SAVEAROUND<br><br>                                        Defendant. | Civil Action No.: 3:18-cv-1142 (MAD/DEP) |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiffs Bloomin' Brands Inc. ("*Bloomin' Brands*"), Outback Steakhouse of Florida, LLC ("*Outback*"), Carrabba's Italian Grill, LLC ("*Carrabba's*"), and Bonefish Grill, LLC ("*Bonefish*") (collectively "Plaintiffs"), by and through their undersigned attorneys, for their complaint against Defendant Enjoy the City North, Inc., d/b/a SaveAround ("Defendant" or "*SaveAround*"), allege as follows:

### NATURE OF THE ACTION

1.      This a declaratory judgment action seeking an order declaring (i) that certain "Merchant Agreements" sold by Defendant purporting to bind Plaintiffs to perpetual commitments to honor coupons and other promotional discounts are void and unenforceable as a matter of law; and (ii) that Defendant lacks any legal right to publish or use federally-approved trademarks for *Outback*, *Carrabba's*, or *Bonefish* in violation of the Lanham Act and corresponding New York statutory and common law provisions.

**THE PARTIES**

2.        *Bloomin' Brands* is a Delaware corporation whose principal place of business is located in Tampa, Florida.  It is the ultimate corporate parent of a group of affiliated companies that include Plaintiffs *Outback*, *Carrabba's*, and *Bonefish*.

3.        Plaintiff *Outback* is a Florida Limited Liability Company whose principal place of business is located in Tampa, Florida.

4.        Plaintiff *Carrabba's* is a Florida Limited Liability Company whose principal place of business is located in Tampa, Florida.

5.        Plaintiff *Bonefish* is a Florida Limited Liability Company whose principal place of business is located in Tampa, Florida.

6.        On information and belief, Defendant *SaveAround* is a New York corporation whose principal place of business is located in Binghamton, New York.

**JURISDICTION AND VENUE**

7.        This Court has original jurisdiction over those claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1331 and 1338.  This Court has supplemental jurisdiction over the claims arising under the laws of New York pursuant to 28 U.S.C. § 1367.

8.        Venue is proper in this judicial district based on the Defendant's residency pursuant to 28 U.S.C. § 1391(b) and (c).

**PLAINTIFFS' BUSINESS AND TRADEMARKS**

9.        *Bloomin' Brands* is a casual dining restaurant company that owns and operates nearly 1,500 restaurants throughout 48 states, Puerto Rico, Guam and 22 countries, including such restaurant chains as Outback Steakhouse, Carrabba's Italian Grill, and Bonefish Grill.

10. Each individual restaurant owned and operated by *Bloomin' Brands* is managed by a general manager, whose responsibilities include making the day-to-day operational decisions with respect to the particular restaurant they are responsible for managing.  The general managers are not directors, officers, or employees of Bloomin' Brands, Outback, Carrabba's, or Bonefish, but rather are employees a company named OS Restaurant Services, LLC, who contracts with Plaintiffs to provide such employees.

11. At all times relevant to this lawsuit, *Bloomin' Brands* subsidiary *Outback* has been the owner of federally-registered trademarks, and associated common law rights, for terms and logos covering and related to the Outback Steakhouse restaurants, including trademarks containing or comprised of: OUTBACK and/or OUTBACK STEAKHOUSE in connection with the operation and advertisement of its restaurants (hereinafter collectively referred to as the "OUTBACK MARKS").

12. At all times relevant to this lawsuit, *Bloomin' Brands* subsidiary *Carrabba's* has been the owner of federally-registered trademarks, and associated common law rights, for terms and logos covering and related to the Carrabba's Italian Grill restaurants, including trademarks containing or comprised of: CARRABBA'S and/OR CARRABBA'S ITALIAN GRILL in connection with the operation and advertisement of its restaurants (hereinafter collectively referred to as the "CARRABBA'S MARKS").

13. At all times relevant to this lawsuit, *Bloomin' Brands* subsidiary *Bonefish* has been the owner of federally-registered trademarks, and associated common law rights, for terms and logos covering and related to the Bonefish Grill restaurants, including trademarks containing or comprised of: BONEFISH and/or BONEFISH GRILL in connection with the operation and

advertisement of its restaurants (hereinafter collectively referred to as the "BONEFISH MARKS").

14.     Since at least as early as 1987, The OUTBACK MARKS, CARRABBA'S MARKS, and BONEFISH MARKS (collectively, the "PLAINTIFFS' MARKS" or "the MARKS"), have been used by Plaintiffs in connection with the operation and advertisement of its casual dining business.

15.     The PLAINTIFFS' MARKS are used extensively and continuously in marketing and advertising campaigns for Plaintiffs' restaurants and related goods and services.

16.     Plaintiffs have spent a great deal of money, energy, and time developing its restaurant brands and commercial identities.

17.     Over the years, consumers have come to identify PLAINTIFFS' MARKS as designating casual dining restaurants with reliably outstanding quality, service, and products.

18.     PLAINTIFFS' MARKS are carefully and regularly policed by Plaintiffs to ensure that they remain associated with only the highest quality goods and services that accord with Plaintiffs' customers' expectations and past experiences.

19.     Each of PLAINTIFFS' MARKS represents and protects Plaintiffs' uniquely valuable and differentiated brand.

20.     Because of this widespread and longstanding use and promotion of the PLAINTIFFS' MARKS, and the dining experience they cover, Plaintiffs' restaurant operations operated in connection with PLAINTIFFS' MARKS have experienced significant and longstanding commercial success.

21.     As a result of this long and extensive promotion and use in association with high-quality casual dining, the PLAINTIFFS' MARKS have acquired tremendous goodwill and

secondary meaning among the consuming public, who recognizes such marks as exclusively associated with Plaintiff and Plaintiffs' restaurants.

22.    PLAINTIFFS' MARKS are non-functional and serve as arbitrary source identifiers of the Plaintiffs and their highly regarded restaurants.

23.    Plaintiffs' own federal trademark registrations for the MARKS, including the following:

| Mark | Registration | Registration Date | Goods/Services | Owner |
|---|---|---|---|---|
| OUTBACK STEAKHOUSE | 1523949 | FEBRUARY 7, 1989 | RESTAURANT AND BAR SERVICES | OUTBACK |
| OUTBACK STEAKHOUSE | 1780666 | JULY 6, 1993 | RESTAURANT AND BAR SERVICES | OUTBACK |
| OUTBACK | 2052618 | APRIL 15, 1997 | DINE IN AND CARRY OUT RESTAURANT SERVICES | OUTBACK |
| OUTBACK STEAKHOUSE | 3626269 | MAY 26, 2009 | CARRY-OUT RESTAURANTS; RESTAURANT AND BAR SERVICES | OUTBACK |
| OUTBACK STEAKHOUSE | 3701729 | OCTOBER 27, 2009 | CARRY-OUT RESTAURANTS; RESTAURANT AND BAR SERVICES | OUTBACK |
| [DESIGN ONLY] | 3735016 | JANUARY 5, 2010 | CARRY-OUT RESTAURANTS; RESTAURANT AND BAR SERVICES | OUTBACK |
| OUTBACK STEAKHOUSE CURBSIDE TAKE-AWAY | 3992345 | JULY 12, 2011 | CARRY-OUT RESTAURANTS; TAKE-OUT RESTAURANT SERVICES | OUTBACK |
| OUTBACK STEAKHOUSE DONE RIGHT | 4950428 | MAY 3, 2016 | RESTAURANT AND BAR SERVICES | OUTBACK |
| CARRABBA'S ITALIAN GRILL | 2086036 | AUGUST 5, 1997 | RESTAURANT AND CATERING SERVICES | CARRABBA'S |
| CARRABBA'S ITALIAN GRILL | 2817361 | FEBRUARY 24, 2004 | DINE IN, CARRY OUT AND CATERING RESTAURANT SERVICES | CARRABBA'S |
| CARRABBA'S ITALIAN GRILL | 3634328 | JUNE 9, 2009 | BAR AND RESTAURANT SERVICES; CARRY-OUT RESTAURANTS | CARRABBA'S |
| CARRABBA'S | 3642493 | JUNE 23, 2009 | BAR AND RESTAURANT SERVICES; CARRY-OUT RESTAURANTS | CARRABBA'S |

| CARRABBA'S ITALIAN GRILL | 3642496 | JUNE 23, 2009 | BAR AND RESTAURANT SERVICES; CARRY-OUT RESTAURANTS | CARRABBA'S |
|---|---|---|---|---|
| CARRABBA'S ITALIAN GRILL | 3642497 | JUNE 23, 2009 | BAR AND RESTAURANT SERVICES; CARRY-OUT RESTAURANTS | CARRABBA'S |
| BONEFISH GRILL | 2772900 | OCTOBER 14, 2003 | RESTAURANT SERVICES | BONEFISH |
| BONEFISH GRILL | 2806557 | JANUARY 20, 2004 | RESTAURANT SERVICES | BONEFISH |
| BONEFISH GRILL | 2836310 | APRIL 27, 2004 | RESTAURANT SERVICES | BONEFISH |
| BONEFISH GRILL | 3057896 | FEBRUARY 7, 2006 | RESTAURANT SERVICES | BONEFISH |
| BONEFISH GRILL | 3111453 | JULY 4, 2006 | RESTAURANT AND BAR SERVICES | BONEFISH |
| BFG | 4090984 | JANUARY 24, 2012 | BAR AND RESTAURANT SERVICES; CARRY-OUT RESTAURANTS | BONEFISH |

24.     Most of the above registrations are incontestable pursuant to 15 U.S.C. § 1065.

25.     Pursuant to 15 U.S.C. § 1115(a), the registrations for the PLAINTIFFS' MARKS are *prima facie* evidence of the validity of such marks, Plaintiffs' ownership of such MARKS, and their exclusive right to use such marks in connection with the goods identified in such registrations.  Pursuant to 15 U.S.C. § 1115(b), Plaintiffs' incontestable registrations noted above are conclusive evidence of the validity of the marks and their corresponding registration, of Plaintiffs' ownership of those MARKS, and of Plaintiffs' exclusive right to use those MARKS in commerce.

26.     Plaintiffs' also have strong common law trademark rights in the MARKS by virtue of their longstanding and well-recognized use in commerce in connection with various goods and services.

27.     The MARKS are famous, inherently distinctive, have acquired distinctiveness and secondary meaning, represent valuable goodwill, have gained a reputation for quality belonging

exclusively to Plaintiffs, and are widely recognized by the general consuming public of the United States as designations of source for Plaintiffs' goods and services.

### DEFENDANT'S BUSINESS ACTIVITIES AND MERCHANT AGREEMENT

28.     On information and belief, Defendant *SaveAround* solicits businesses, such as restaurants, around North America to procure permission to sell coupons and other promotional discounts for those business establishments in *SaveAround*'s coupon booklets and/or web offers.

29.     The coupon booklets and/or web offers are comprised of multiple coupons and/or promotional discounts to be used at participating businesses.

30.     Upon information and belief, *SaveAround* generates revenue for itself by selling its coupon books or otherwise selling access to its web discounts to consumers so that they may access and use the coupons and/or promotional offers.

31.     The use of *SaveAround* coupons and/or promotional offers by purchasing consumers necessarily results in a loss of revenue to participating businesses.

32.     On information and belief, *SaveAround's* business model is to secure permission for promotional discounts from participating businesses through the consent of individual restaurant managers, rather than corporate officers, *via* a standard one page form "Merchant Agreement" with an additional page of boilerplate "standard terms and conditions."   A true and correct copy of an exemplar of the *SaveAround* Merchant Agreement is attached hereto as **Exhibit "A."**

33.     The Merchant Agreement utilized as part of *SaveAround's* standard business model purports to grant *SaveAround* a license to use the business's trademark and other intellectual property in association with the coupons offered.

34.     The Merchant Agreement does not offer or provide any monetary consideration to participating businesses, but rather promises the provision of a service, specifically to "advertise" the businesses' goods and services via the coupons and/or promotional offers.

35.     The standard form Merchant Agreement used by *SaveAround* provides the following with respect to the number of times that *SaveAround* can publish the identified discount coupons:

> 4. <u>Advertising</u>. SA [*SaveAround*] will bear all expenses in the promotion, sale and distribution of its respective discount programs. **SA shall have the right to include** Merchant Discount Offer(s) in such cards, books, mailers or other publications; internet web sites; wireless transmissions; electronic media or other media, in such areas, through such means and **in such quantities** as SA **in its sole discretion deems appropriate**.

36.     Accordingly, under the boilerplate terms and conditions, *SaveAround* purports to grant itself the contractual right to publish and disseminate as many or as few coupons as it, "in its sole discretion," determines.

37.     The corresponding monetary exposure of any business obligated to accept the monetary loss associated with the redemption of coupons cannot be determined from the terms of the Merchant Agreement.

38.     Notably, Paragraph 4 of the terms and conditions of the Merchant Agreement not only provides *SaveAround* the discretion to publish as many coupons as it wants, it provides *SaveAround* the discretion to publish no coupons at all.

39.     Additionally, the Merchant Agreement provides the following regarding the length of its term:

> 3. Merchant shall honor all Coupons properly tendered during regular business hours from the date of this Agreement until December 31, 2019. **Thereafter, this Agreement shall be continually extended on an annual basis until the Merchant or SA notices the other party by certified mail on or before the 1st day of February of any year of its intention to terminate this Agreement.** If

such notice is provided, this Agreement shall terminate on December Thirty-First
of the year in which the notice is given

(emphasis added)

40.     Thus, the Merchant Agreement provides for consecutive automatic one-year
renewals so long as written notice of non-renewal is not provided by February 1st of a given
year.

41.     The Merchant Agreement also provides that it "shall be governed by the laws of
the State of New York."

## DEFENDANT'S SOLICITATION OF BLOOMIN' BRANDS RESTAURANTS

42.     Among its participating businesses, *SaveAround* specifically targets individual
restaurants as a source for its coupons and promotional offers.

43.     Since approximately 2014, upon information and belief, Defendant *SaveAround*
has solicited approximately 220 *Bloomin' Brands* restaurants to purport to obtain approval *via*
signed Merchant Agreements for the offer of specific coupons and promotional offers at that
restaurant.

44.     **Exhibit "A"**—attached hereto—is an example of one such Merchant Agreement
relative to a *Carrabba's Italian Grill* in Coral Springs, Florida.

45.     Consistent with its regular business practice, Defendant *SaveAround* never
contacted Plaintiffs' corporate headquarters or any officer of any of the Plaintiffs in order to
obtain approval for such individual agreements.

46.     Rather, upon information and belief, for each of the 220 Merchant Agreements
implicating Plaintiffs' restaurants, *SaveAround* sought and obtained the signature of each of the
restaurant's managers.

47.    Restaurant managers of Plaintiffs' restaurants are not authorized to license PLAINTIFFS' MARKS, are not authorized to enter into multiyear contracts, and are not authorized to enter into contracts containing an automatic renewal clause that would reduce or impair the standard pricing charged for Plaintiffs' standardized menu offerings.  Attached as **Exhibit "B"**" is a true and correct copy of the *Bloomin' Brands Contract Policy*.

48.    In 2017, *Bloomin' Brands* became aware that *SaveAround* was providing discount coupons for its restaurants in its coupon books using PLAINTIFFS' MARKS.

49.    Plaintiffs never granted *SaveAround* permission to use its trademarks in connection with publishing the coupon books, or for any other purpose.

50.    On or about June 17, 2017, *Bloomin' Brands'* Senior Director of Employment and Restaurant Licensing, Jacilyn Jolly, corresponded with Luke Stanton, *SaveAround's* President, and expressly notified him that use of any *Bloomin' Brands'* trademarks by *SaveAround* "would be considered unauthorized use and a trademark violation."  Attached as **Exhibit "C"**" is a true and correct copy of that correspondence.

51.    *SaveAround* disregarded *Bloomin' Brands'* notification and continued using many of *Bloomin' Brands'* trademarks in its coupon books, and upon information and belief, continues to do so at present.

52.    On March 20, 2018, *Bloomin' Brands* again notified *SaveAround* that its use of PLAINTIFFS' MARKS was unauthorized and a trademark violation. Attached as **Exhibit "D"**" is a true and correct copy of that correspondence.

53.    The March 20, 2018 correspondence informed *SaveAround* that the only individual with authority to bind any *Bloomin' Brands'* company to an agreement with *SaveAround* was *Bloomin' Brands* Chief Legal Officer, Joseph Kadow.  *See* Ex. "C."

54.     Notwithstanding this express notice, upon information and belief, between March 22, 2018 and June 7, 2018, *SaveAround* thereafter continued to solicit signatures from restaurant managers for Merchant Agreements with 38 *Bloomin' Brands* restaurants, without ever contacting corporate headquarters or Mr. Kadow.

55.     To this day, and without authorization from *Bloomin' Brands*, or any of the Plaintiffs, *SaveAround* continues to wrongfully and intentionally use PLAINTIFFS' MARKS on and in conjunction with its coupon books as shown below:[1]







---

[1] These examples were found on SaveAround's website, https://savearound.com/pages/buy-book, on August 2, 2018. On this website, individuals can review coupons available in their specific geographic region and view "samples" of the coupons they would receive if they purchase a coupon book.

56.     Attached as **Exhibit "E**" is a spreadsheet, provided by *SaveAround*, that purports to itemize Merchant Agreements with *Bloomin' Brands* restaurants signed between April 17, 2012 and June 7, 2018.

57.     For each of the Merchant Agreements identified in Exhibit "E," *SaveAround* (i) never received corporate authorization to market, promote, or advertise its coupon books using PLAINTIFFS MARKS in any manner; (ii) never sought approval or consent from any individual with the contract authority to bind the Plaintiffs; and (iii) never made any reasonable inquiry as to the authority of individual restaurant managers to bind the corporate Plaintiffs.

58.     Among other harms, *SaveAround*, by its acts complained of herein, has infringed and diluted PLAINTIFFS' MARKS and otherwise improperly used Plaintiffs' reputation and goodwill to promote its coupon booklet, which is not authorized, approved, licensed, produced or sponsored by Plaintiffs.

59.     The aforesaid acts of *SaveAround* have caused and, unless restrained and enjoined by this Court, will continue to cause, irreparable damage, loss and injury to Plaintiff, for which Plaintiff have no adequate remedy at law.

## COUNT I

## <u>DECLARATORY JUDGMENT</u>
## <u>TRADEMARK INFRINGEMENT</u>

60.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 59 as if fully set forth herein.

61.     An actual, justiciable case or controversy exists between the parties relative to, among other things, *SaveAround's* unauthorized use of trademarks owned by Plaintiffs.

62.     *SaveAround's* activities as described above, including its use of Plaintiffs' MARKS in commerce, constitute infringement of Plaintiffs' registered MARKS, in violation of the Lanham Act, 15 U.S.C. § 1114.

63.     The widespread unauthorized dissemination of the infringing coupon booklets has diluted and tarnished Plaintiffs' famous, distinctive trademarks in violation of the Lanham Act, § 43(c), 15 U.S.C. § 1125(c).

64.     *SaveAround's* acts of infringement, unless enjoined by this Court, will continue to cause Plaintiffs to sustain irreparable damage, loss and injury, for which Plaintiffs have no adequate remedy at law.

65.     *SaveAround's* use of Plaintiffs' trade name and logos are identical to, and indistinguishable from, Plaintiffs' actual MARKS and thus likelihood of confusion is established as a matter of law.

66.     Therefore, Plaintiffs are entitled to a Declaration that Defendant is violating the Lanham Act and an award of injunctive relief barring Defendant from continuing to infringe on Plaintiffs' trademarks.  *See* Lanham Act, § 324(a), 15 U.S.C. § 1116(a); Lanham Act, § 43(c), 15 U.S.C. § 1125(c)(1).

67.     *SaveAround* has engaged in infringing activities willfully, so as to justify the award of attorneys' fees under the Lanham Act § 35, 15 U.S.C. § 1117.

## COUNT II

## DECLARATORY JUDGMENT
## LACK OF AUTHORITY OR REPRESENTATIVE CAPACITY

68.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 67 as if fully set forth herein.

69.     Under New York law, the legal authority of an agent to bind a principal is determined under the doctrines of *actual authority* and/or *apparent authority*.

70.     Individual restaurant managers lack authority to bind Plaintiffs to the *SaveAround* Merchant Agreements, including the provision purporting to license PLAINTIFFS' MARKS.

71.     Plaintiffs did not know, nor did not have reason to know, that individual restaurant managers were executing *SaveAround's* Merchant Agreements, until June 2017 at the earliest.

72.     At no point in time did Plaintiffs provide *SaveAround* reason or objective basis to believe that individual restaurant managers could bind Plaintiffs to promotional agreements, particularly those that created the potential for significant lost revenue or otherwise licensed valuable trademark rights.

73.     *SaveAround* intentionally failed to contact Plaintiffs to determine whether they consented to its Merchant Agreements and failed to make reasonable inquiry to determine whether individual restaurant managers had the actual authority to bind Plaintiffs to the Merchant Agreements.

74.     *SaveAround* was put on notice as early as June 17, 2017 that restaurant managers did *not* have the actual authority to bind Plaintiffs to the Merchant Agreements but still proceeded to contract with restaurant managers and executed approximately 82 Merchant Agreements after that date.

75.     *SaveAround* was again put on express notice on March 20, 2018 that restaurant managers did *not* have the actual authority to bind Plaintiffs to the Merchant Agreements but still proceeded to contract with restaurant managers and executed approximately 32 Merchant Agreements after that date.

76.     Accordingly, all 220 Merchant Agreements are unenforceable for lack of contractual authority.

77.     Therefore, Plaintiffs are entitled to an Order declaring that all of the Merchant Agreements purporting to be between *SaveAround* and any one of the Plaintiffs are void and unenforceable for lack of contractual authority.

78.     Alternatively, Plaintiffs are entitled to an Order declaring that all Merchant Agreements, executed after June 17, 2017, purporting to be between *SaveAround* and any one of the Plaintiffs, are void and unenforceable for lack of contractual authority.

79.     Alternatively, Plaintiffs are entitled to an Order declaring that all Merchant Agreements, executed after March 20, 2018, purporting to be between *SaveAround* and any one of the Plaintiffs, are void and unenforceable for lack of contractual authority

## COUNT III

### DECLARATORY JUDGMENT
### THE AGREEMENT IS UNENFORCEABLE DUE TO INDEFINITENESS

80.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 79 as if fully set forth herein.

81.     Under New York law, in order to constitute an enforceable contract, a purported agreement must be sufficiently definite to allow the court to ascertain the terms of the parties' agreement.  In particular, the parties' agreement must be sufficiently certain and specific as to its material terms.

82.     Defendant's purported Merchant Agreements provide that *SaveAround* can publish and disseminate as many or as few coupons as it wants under the terms of its boilerplate agreement, rendering the total amount of lost revenue to Plaintiffs' restaurants as a result of the agreements unknowable and not capable of being calculated.

83.     Under New York law, where a contract does not allow a party to determine in advance to quantify its potential obligations and exposure, it is fatally indefinite and unenforceable.

84.     The price or cost of a contract is an essential term of any contract, which, within the putative Merchant Agreements, is not susceptible to any objective or methodological ascertainment.

85.     Because of the foregoing, the Merchant Agreements are unenforceable as a matter of New York law due to their indefiniteness.

86.     Therefore, Plaintiffs are entitled to an Order declaring that all Merchant Agreements purporting to be between *SaveAround* and any one of the Plaintiffs are void and unenforceable due to their indefiniteness.

**COUNT IV**

**<u>DECLARATORY JUDGMENT</u>**
**<u>FAILURE OF CONSIDERATION/LACK OF MUTUALITY</u>**

87.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 86 as if fully set forth herein.

88.     Under New York law, where parties have entered into a bilateral contract providing that each party's promised performance in consideration for the other party's promised performance, and one or more of the parties can avoid their performance obligation, the agreement is illusory.

89.     Paragraph 4 of the boilerplate terms contained within the Merchant Agreements not only provides *SaveAround* the discretion to publish *as many* coupons as it wants, it provides *SaveAround* the discretion *to publish no coupons at all*.

90.     According to these terms, *SaveAround* retained an unlimited right to unilaterally decide the nature and extent of its performance under the Merchant Agreements.

91.     Indeed, the Merchant Agreements permitted *SaveAround* to avoid any performance obligation whatsoever by printing no coupons at all.

92.     Since the only consideration accruing to Plaintiffs under the Merchant Agreements is the purported advertising of Plaintiffs' services and attendant increase in foot traffic from disseminating the coupons, if *SaveAround* exercises its discretion to publish no coupons, Plaintiffs are denied any benefit from the bargain.

93.     Under New York law, *SaveAround*'s boilerplate provisions contained within their Merchant Agreements providing them the "sole discretion" whether to perform at all renders the Merchant Agreements illusory and unenforceable.

94.     Therefore, Plaintiffs are entitled to an Order declaring that all Merchant Agreements purporting to be between *SaveAround* and any one of the Plaintiffs are illusory and/or void and unenforceable due to for lack of mutuality.

## COUNT V

## DECLARATORY JUDGMENT
## VIOLATION OF GENERAL OBLIGATIONS LAW § 5-903

95.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 94 as if fully set forth herein.

96.     The Merchant Agreements expressly represent that *SaveAround* is providing a service to the signatory restaurants—namely the provision of advertising.

97.     The boilerplate within the Merchant Agreements provide for consecutive automatic one-year renewals where written notice of non-renewal is not provided by February 1st of the final term year—or any year thereafter.

98.     Upon information and belief, all of the Merchant Agreements provide that they "shall be governed by the laws of the State of New York."

99.     New York General Obligations Law § 5-903 provides that automatic renewal provisions, such as the one in the Merchant Agreements, are unenforceable as a matter of law, unless the party benefiting from the provision provides a written reminder to the other party that the notice of non-renewal is required.

100.    Specifically, § 5-903(2) states that in "a contract for service . . .  to or for any real or personal property" an automatic renewal provision is unenforceable "unless the person furnishing the service . . . at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service. . . written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract."

101.    The Merchant Agreements, to the extent they are enforceable, are subject to General Obligations Law § 5-903.

102.    Upon information and belief, *SaveAround* never provided written notice "calling attention to" the automatic renewal provisions within any of the 220 Merchant Agreements that reached the end of their respective initial term.

103.    As a result, assuming *arguendo* that the Merchant Agreements were otherwise enforceable, each of the 220 Merchant Agreements that has expired according to initial term is no longer in effect as per New York General Obligations Law § 5-903 and, as a matter of New York law, was not resurrected by virtue of the automatic renewal provision contained within the boilerplate terms and conditions of the Merchant Agreements.

104.     Therefore, as an alternative remedy to those requested in Counts I – IV, Plaintiffs are entitled to an Order declaring that all Merchant Agreements, whose original term has expired, have terminated by application of New York General Obligations law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request a Declaratory Order determining the rights as between the parties as follows:

A.      That Defendant is actively and intentionally using Plaintiffs' trademarks without permission or authority in violation of the Lanham Act and permanently enjoining any further impermissible use;

B.      That Plaintiffs' restaurant managers lacked authority—actual or apparent—to license Plaintiffs' valuable trademarks during the following time frames, pleaded in the alternative;

(1) For any of the 220 Merchant Agreements;

(2) In alternative, for any Merchant Agreement executed after June 17, 2017; or

(3) In the alternative, for any Merchant Agreement executed after March 20, 2018;

C.      That *SaveAround* has engaged in infringing activities willfully;

D.      That *SaveAround's* Merchant Agreements fail for lack of definiteness and therefore are void and unenforceable;

E.      That *SaveAround's* Merchant Agreements are illusory and fail for lack of mutuality and therefore are void and unenforceable;

F.      In the alternative, that the Merchant Agreement's automatic renewal provision be deemed ineffective as violative of New York General Municipal law limiting any such agreement deemed enforceable to its initial term; and

G.      Awarding Plaintiffs costs and attorneys' fees under the Lanham Act § 35, 15 U.S.C. § 1117.


Dated: September 21, 2018                    Respectfully submitted,

                                             *s/John G. Powers*
                                    By:_____

                                             John G. Powers (508934)
                                             James P. Youngs (515029)
                                             Paul J. Tuck (520814)
                                             HANCOCK ESTABROOK, LLP
                                             jpowers@hancocklaw.com
                                             1500 AXA Tower I
                                             100 Madison Street
                                             Syracuse, NY 13202
                                             (315) 565-4500

                                             *Counsel of record for Plaintiffs*